**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DYTRELL JONES,

     Plaintiff,

v.                                    CASE NO.:  3:21-cv-179-MMH-JBT

FLORIDA DEPARTMENT OF
CORRECTIONS, et al,

     Defendants.
_____/

## MOTION TO DISMISS

     The Defendants Parris, Polk, Carter, and the Secretary of the Florida Department of Corrections, by and through the undersigned counsel, moves the Court to dismiss all or part of Plaintiff's operative complaint (Doc. 1), and in support of the Defendants' position, state the following:

### Background

     1.     The Plaintiff, Dytrell Jones DC# M75660, is an inmate in the custody of the Florida Department of Corrections ("FDC") since March 20, 2013 for various felonies and is expected to be released on June 10, 2030.  The Plaintiff is currently housed at Lake Correctional Institution in Clermont, Florida.[1]

     2.     On February 23, 2021, this case was transferred from the Northern District – Tallahassee division to the Middle District – Jacksonville division.  Doc. 19.

---

[1] See FDC's inmate search: http://www.dc.state.fl.us/offendersearch/

3.      Defendants Parris and Polk were served on March 9, 2021.  Docs. 23-24.

Defendant Carter was served on March 10, 2021.  Doc. 25.  The Secretary of the

Florida Department of Corrections was served on March 22, 2021.  Doc. 26.  The

Court ordered the Defendants to file their responsive pleading by June 11, 2021.  Doc.

28.

## Plaintiff's Factual Allegations

4.      The Plaintiff alleges that he is an S-3 mental health inmate, who is

mentally impaired "with an extraordinary[ly] extensive severe mental health record."

Doc. 1 at 5.  On February 7, 2020, the Plaintiff was housed at Hamilton Correctional

Institution Annex ("Hamilton") in administrative confinement "under investigation

pending no disciplinary actions."  Id.  The Plaintiff alleges that while in Golf dormitory

in cell 2209L, the toilet continuously clogs limiting his ability to use it.  Id.  A foul

smell emanates from the sink throughout the day and that insects crawl out of it.  Id.

The sink spigot has green, white, and black mold or mildew on it, and the tap water

from this spigot is his only source of water outside of his three meals a day.  Id.  The

Plaintiff is confined to his cell for 24 hours a day excluding callouts, three showers a

week, and one a week outdoor recreation.  Id.

5.      Defendant Polk is the Warden of Hamilton; Defendant Parris is the

Assistant Warden of Hamilton; Defendant Carter is a Major at Hamilton; and

Defendant Inch is the Secretary of the Florida Department of Corrections.  Id. at 2-3.

All Defendants are sued in their official and individual capacities.  Id.

2

6.      The Plaintiff alleges that Polk and Parrish conducted inspections at least once a week and they are aware of the prison's conditions due to their inspections and through Plaintiff's complaints and grievances.  Id. at 5-6.  The Plaintiff alleged that on an unknown date Carter instructed the Plaintiff stand under a cell light "in a bias manner" that caused the Plaintiff to "experience spontaneous psychotic episodes" and "uncontrollable outbursts."  Id. at 6.

7.      In August 2020, the Plaintiff declared a psychological emergency due to the "filth of confinement."  Id.  Upon returning to his cell, Plaintiff's cellmate refused to permit the Plaintiff into the cell and the Plaintiff was placed "in the mildew infested [showers][2] for nearly 8 hours if not more."  Id.

8.      Sometime after August 2020, the Plaintiff was moved to Cell H-3106 in H-dormitory and the Plaintiff's alleges that he is breathing in that cell's mold and mildew, which is "caked up in the window and cell vent."  Id.  The Plaintiff alleges that insects and rodents are entering his cell, and that his cell has not been cleaned and that Parrish, Polk, and Carter have ignored the Plaintiff's attempts to remedy the situation.  Id. at 7.

9.      In one undated event, the Plaintiff "went into a psychotic episode yelling 'I can get sick drinking from this mildew infested sink. I am a Human and deserved to be treated like one.  What are [y'all] inspecting every week…[Y'all] walk by like [y'all] are scientist studying lab rats that are being tested.  Id.  In his complaint, the Plaintiff

---

[2] The Defendants assume that the Plaintiff misspelled the word "shows" when he intended to write "showers."

alleges that Carter utilized chemical agents on the Plaintiff and placed him on property restrictions for five days, however, it is unclear whether the use of chemical agents by Carter occurred before or after the previously referenced psychotic episode.  Id.

10.	On another unknown date, the Plaintiff alleges that he contracted a skin infection "from the filth" and was treated with calamine lotion and therapeutic gel shampoo.  Id. at 7-8.  The Plaintiff alleges that this infection caused "excruciating pain."  Id. at 8.  The Plaintiff also experienced episodic psychotic outburst caused by "not being able to cope with the continuum conditions of filth, insects, and attitudes of [the Defendants]."  Id.

11.	For relief, the Plaintiff requests $150,000 from each defendant in their individual capacities; $100,000 in punitive damages from each defendant in their individual capacities; nominal damages, and injunctive relief for an "adequate sanitation procedure to further prevent inhumane living conditions in confinement."  Id. at 11.

## Motion to Dismiss Standard

"In order to survive a motion to dismiss, a complaint must contain sufficient matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S 544, 570, 127 S. Ct. 1955 (2007)).   The plausibility requirement requires more than the possibility that a defendant acted unlawfully.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint that merely pleads facts consistent with liability does not meet the plausibility standard.  Iqbal, 556

U.S. at 678 (citing Twombly, 550 U.S. at 557).  In order to meet the plausibility standard, facts must instead raise a right to relief above the speculative level. Twombly, 550 U.S. at 555.  This is because the federal pleading rules require a complaint to provide sufficient notice to a defendant regarding the causal connection between the defendant and the plaintiff's claim, so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people…" Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347, 125 S. Ct. 1627 (2005).

Conclusory factual allegations, unwarranted deductions, claims that are internally inconsistent or can be disproven by facts of which the court can take judicial notice and legal conclusions are not accepted as true for the purposes of a motion to dismiss.  Ellen S. v. Fla. Bd. of Bar Examiners, 859 F. Supp. 1489, 1492 (S.D.Fla. 1994) (citations omitted); see Marsh v. Butler County, Ala., 268 F.3d 1014, 1036, 1036 n.16 (11th Cir. 2001) ("In the light of the usual pleading requirements of Fed. Rule Civil Proc. 8(a), unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal").  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.   "'[N]aked assertions' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, *do **not** suffice*." Iqbal, 129 S. Ct. at 1949 (quoting and citing Twombly, 550 U.S. at 555, 557) (emphasis added).  Conclusory or unsupported

statements, without more, are insufficient to show a right to relief.  <u>Iqbal</u>, <u>supra</u>; <u>Twombly</u>, <u>supra</u>.

While *pro se* litigants are entitled to the benefit of having their pleadings liberally construed, a court cannot "act as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action."  <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F. 3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by <u>Iqbal</u>).  Dismissal is also warranted if, assuming the truth of the factual allegations of the complaint, there is a dispositive legal issue which precludes relief.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326, 109 S. Ct. 1827 (1989).

The language of 42 U.S.C. § 1983 plainly "requires proof of an affirmative causal connection between the official act or omission complained of and the alleged constitutional deprivation."  <u>Bailey v. Board of County Commisioners of Alachua County</u>, 956 F.2d 1112, 1124 (11th Cir. 1992), <u>cert. denied</u>, 506 U.S. 832, 113 S. Ct. 98 (1992).  "One cannot be held liable for the actions and/or inactions of others, but can only be held responsible if he participated in the deprivation of Plaintiff's constitutional rights or directed such action and/or omission that resulted in such deprivation."  <u>Schebel v. Charlotte County</u>, 833 F.Supp. 889, 891 (M.D.Fla. 1993).

**Eleventh Amendment Immunity**

The Plaintiff sued the Defendants in their official capacities and he appears to only asks for compensatory and punitive damages on individual capacity claims, however, to the extent that the Plaintiff's claims may be construed as requesting compensatory and punitive damages against as the Defendants as FDC employees in

6

their official capacities, then such claims are deemed to be a suit against the state for Eleventh Amendment purposes.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45, 58 (1989).  Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit for damages brought by a private individual against a state in federal court. Federal Maritime Comm'n v. South Carolina State Ports Auth., 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002); Kentucky v.  Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Gamble v. Florida Dep't of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986).  Eleventh Amendment immunity extends also to state agents and state instrumentalities (Regents of the Univ. of California v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)) and arms of the state as well as state officials.  Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).  Based upon the foregoing, any claims for compensatory and punitive damages against Defendants in in their official capacities should be dismissed.

**Injunctive Claims are Moot**

The basis for the Plaintiff's claims are the conditions at Hamilton.  See generally Doc. 1.  A review of the FDC's inmate search website states that the Plaintiff is currently housed at Lake Correctional Institution in Clermont, Florida, which is approximately 158 miles south of Hamilton.  The  Plaintiff  seeks  injunctive  relief against the Secretary for "adequate sanitation procedure to further prevent inhumane living conditions in confinement."   Doc.  1 at 11.   These "adequate sanitation

procedures" are allegedly because of filthy or inhumane prison conditions at Hamilton.  See generally Doc. 1.

To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest.  Thomas v. Bryant, 614 F.3d 1288, 1318 (11th Cir.2010).  However, a request for injunctive relief may be moot if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Addison v. Forest Service of the U.S. Department of Agriculture, 108 F.Supp.2d 1365, 1368 (M.D.Fla. July 17, 2000).  The Plaintiff is entitled to injunctive relief only on a showing of "real and immediate – as opposed to a merely conjectural threat or hypothetical – threat of *future* injury."  Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original).  Mootness is a question of law, to be decided de novo by the courts. See, Hall v. Secretary, Alabama, 902 F. 3d 1294, 1297 (11th Cir. 2018) (quoting Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1262 (11th Cir. 2006)). The doctrine of mootness derives directly from the Article III case-or-controversy limitation because "an action that is moot cannot be characterized as an active case or controversy." Id. "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Id. at 1336.

The Plaintiff regularly receives or is given access to cleaning supplies.  Doc. 1 at 14.  According to the Florida Administrative Code ("F.A.C.") Ch. 33-601.800(6)(f), a close management inmate, such as the Plaintiff, is responsible for the sanitation of his cell.  Any inmate who does not properly clean their cell may receive disciplinary reports for failure to maintain an acceptable level of hygiene in their housing area with penalties of up to 15 days of loss gain time.  Ch. 33-601.314(1)(d)(8-2), F.A.C.  The Secretary's position is that the Plaintiff will continue to receive the necessary cleaning supplies with or without an injunction because all cells, including the Plaintiff's, must be periodically cleaned by the inmates to avoid or minimize the spread of any pathogens or vermin.  As such there is no controversy to adjudicate as the Plaintiff's sanitation of Plaintiff's cell is wholly within his responsibility as a close management inmate and the appropriate cleaning are supplied, or alternatively, the Plaintiff's requests for injunctive relief are moot as the Plaintiff was transferred to a different facility.

**Lack of Physical Injury**

The Plaintiff alleges that he suffered from "spontaneous psychotic episodes" and "uncontrollable outbursts."  Id. at 6.  In August 2020, the Plaintiff declared a psychological emergency due to the "filth of confinement."  Id.  In one undated event, the Plaintiff "went into a psychotic episode yelling 'I can get sick drinking from this mildew infested sink. I am a Human and deserved to be treated like one".  Id.  In his complaint, the Plaintiff alleges that Carter utilized chemical agents on him, but he fails to allege any specific injuries relating to that event.  The Plaintiff alleges that this

infection caused "excruciating pain." Id. at 8.  The Plaintiff also experienced other

psychotic outbursts caused by "not being able to cope with the continuum conditions

of filth, insects, and attitudes of [the Defendants]." Id.

The Plaintiff is not entitled to any compensatory damages. because he lacks a

physical injury as defined by 1997(e), which states:

> "No Federal civil action may be brought by a prisoner confined in a jail,
> prison, or other correctional facility, for mental or emotional injury
> suffered while in custody without a prior showing of physical injury or the
> commission of a sexual act . . . ."

42 U.S.C. § 1997e(e). A prisoner, even though he has alleged a viable constitutional

claim, is prevented from seeking compensatory damages in the absence of physical

injury pursuant to § 1997e(e) while in custody.  Smith v. Allen, 502 F.3d 1255, 1271

(11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277

2011). "[T]o avoid dismissal under § 1997e(e), a prisoner's claims for emotional or

mental injury must be accompanied by allegations of physical injuries that are

greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294

F.3d 1309, 1312–13 (11th Cir. 2002).

The   Plaintiff's   alleged   mental   episodes   or   outbursts   reflect   a

somatic manifestation of emotional distress, rather than a distinct physical injury as

required for monetary damages under Section 1997e(e).  See Davis v. District of

Columbia, 158  F.3d  1342,  1349  (D.C.Cir.1998) (characterizing  a  psychiatrist's

assertion of weight loss as a "somatic manifestation of emotional distress" rather than

a "physical injury" under § 1997e(e)).   Numerous courts have held that a prisoner

cannot satisfy §1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries. See Davis, supra (affirming sua sponte dismissal of prisoner's civil rights action despite prisoner's affidavit stating that he suffered weight loss, appetite loss, and insomnia after disclosure of his medical status; the language and purpose of Section 1997e(e) "preclude reliance on the somatic manifestations of emotional distress"); Pearson v. Welborn, 471 F.3d 732, 744 (7th Cir.2006)(stating that an "unelaborated claim" of a loss involving 50+ pounds "is insufficient to support [the inmate's] assertion that he suffered 'physical injury' " for purposes of § 1997e(e)); Van Wyhe v. Reisch, 536 F.Supp.2d 1110, 1126 (D.S.D.2008) ("Loss of weight is not a 'physical injury' for purposes of the PLRA." (citations omitted)), reversed in part on other grounds, 581 F.3d 639 (8th Cir.2009); Plasencia v. California, 29 F.Supp.2d 1145, (C.D.Cal.1998) ("The Court finds that weight loss is insufficient to constitute a prior physical injury under PLRA."); see also Murray v. Edwards Cnty. Sheriff's Dep't, 453 F.Supp.2d 1280, 1292 (D.Kan.2006) ("weight loss in itself has been deemed to be insufficient to demonstrate physical injury under the PLRA" (citations omitted)). See also Daniels v. Field Operations Manager Upton, 2016 WL 4491844, (S.D.Ga. August 26, 2016) and Miller v. Balwin County, 2013 WL 1499566 (S.D.Ala. March 15, 2013).

Construing the Plaintiff's allegations liberally, he alleges that the physical manifestations of his alleged mental illness are injuries that entitled him to monetary damages.  These manifestations of mental or emotional injuries cannot support claims

11

for damages under 42 U.S.C. § 1997e(e). Plaintiff is prohibited under the PLRA from bringing his claims for compensatory, general, and presumed damages. Harris I, 190 F.3d at 1287–88 (affirming district court's dismissal of claims for compensatory damages as barred by § 1997e(e)), reinstated on reh'g, Harris II, 216 F.3d at 972; see also Al-Amin v. Smith, 637 F.3d 1192 (11th Cir.2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory damages in the absence of the requisite physical injury).

The only physical injury alleged by Plaintiff is that he contracted a skin infection "from the filth" and was treated with calamine lotion and therapeutic gel shampoo. Doc. 1 at 7-8. However, a "laundry list of ailments, even if proven, do not rise to the level of serious physical injury (nor a constitutional violation)." McGhee v. Escambia County, 2021 WL 640248 at *3 (N.D. Fla. January 15, 2021) citing O'Connor v. Secretary, Florida Department of Corrections, 732 F.Appx. 768, 770 (11th Cir. 2018). See also Thompson v. Secretary, Florida Department of Corrections, 551 F. App'x 555 at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit an emergency room or doctor) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.")). In Oliver v. Whitehead, 2017 WL 26860 at *14 (M.D. Fla. January 3, 2017), that Court held that an inmate's rash obtained from dirty laundry "does not

constitute an injury in the constitutional sense."   In <u>Daughtry v. Moore,</u> 2009 WL

1151858 at *5 (S.D. Ala. April 27, 2009), the Court found that a rash, described as

bumps on the inmate's neck and shoulders, did not constitute a physical injury under

§ 1997e(e). See also <u>Dolberry v. Levine</u>, 567 F.Supp.2d 413, 418 (W.D.N.Y.2008)

("Although plaintiff does allege that he suffered a skin rash due to the lack of showers,

that is a de minimis injury that does not give rise to a claim."); <u>Holder v. Hebert</u>, 2007

WL 4299996 at 3 (W.D.La. Nov. 8, 2007) (rash on legs is a *de minimus* physical

injury.).   The Plaintiff's rash, which was treated, is a de minimis injury, and does not

rise to a constitutional violation.

### Failure to State A Claim

All federal circuits (except the Federal Circuit) have recognized that the

deprivation of basic sanitary conditions can constitute an Eighth Amendment

violation. <u>See</u> <u>Budd v. Motley</u>, 711 F.3d 840, 843 (7th Cir. 2013) (per curiam)

("[A]llegations of unhygienic conditions, when <u>combined with the jail's failure to</u>

<u>provide detainees with a way to clean for themselves with running water or other</u>

<u>supplies, state a claim for relief</u>."); <u>DeSpain v. Uphoff</u>, 264 F.3d 965, 974 (10th Cir.

2001).   <u>Parrish v. Johnson</u>, 800 F.2d 600, 609 (6th Cir. 1986) ("[T]he Eighth

Amendment protects prisoners from being ... denied the basic elements of hygiene.")

(quotation omitted); <u>Green v. McKaskle</u>, 788 F.2d 1116, 1126 (5th Cir. 1986) ("[A]

state must furnish its prisoners with reasonably adequate ... sanitation ... to satisfy [the

Eighth Amendment's] requirements.") (quotation and alteration omitted); <u>Hoptowit</u>

<u>v. Spellman</u>, 753 F.2d 779, 784 (9th Cir. 1985) (noting that the failure to provide

"minimally sanitary" conditions "amounts to a violation of the Eighth Amendment"); <u>Hawkins v. Hall</u>, 644 F.2d 914, 918 (1st Cir. 1981) (explaining that prison conditions "must be sanitary") (quotation omitted); <u>Hite v. Leeke,</u> 564 F.2d 670, 672 (4th Cir. 1977) (recognizing that "the denial of decent and basically sanitary living conditions and the deprivation of basic elements of hygiene" can violate the Eighth Amendment) (quotation omitted).

As previously stated, the cleanliness of Plaintiff's cell is strictly his responsibility as a close management prisoner.  Ch. 33-601.800(6)(f), Florida Administrative Code. Any inmates who do not properly clean their cells receive disciplinary reports for failure to maintain acceptable level hygiene of their housing area with penalties up to 15 days of loss gain time.  Ch. 33-601.314(1)(d)(8-2), Florida Administrative Code.  In the grievance the Plaintiff attached his complaint, the prison's response was that he regularly receives or is given access to cleaning supplies and that he is "enourage[ed]..to utilize the caustics given to clean and sanitize [his] assigned cell." Doc. 1 at 14.  <u>See</u> <u>Budd</u>, <u>supra</u> at 843.  The Plaintiff does not allege that the prison failed to provide cleaning supplies.  If the Plaintiff fails to comply with the rules and regulations of the prison, that is not the fault of any of the Defendants.  For the foregoing reasons, the Plaintiff's Complaint fails to state a claim against the Defendants for violation of the Plaintiff's constitutional rights, and the complaint should be dismissed with prejudice.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ Omar J. Famada
Omar J. Famada
Assistant Attorney General
Florida Bar No. 94467
Office of the Attorney General
The Capital, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850)414-3636

## CERTIFICATE OF SERVICE

On June 21, 2021, I certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF and furnished by U. S. Mail, and/or electronic delivery to: Dytrell Jones, DC# M75660, Lake Correctional Institution, 19225 U.S. Highway 27, Clermont, Florida 34715.

/s/ Omar J. Famada
Omar J. Famada