UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DYTRELL JONES,

        Plaintiff,

v.

                                        Case No. 3:21-cv-179-MMH-JBT

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

## ORDER

### I. Status

Plaintiff Dytrell Jones, an inmate of the Florida penal system, initiated this action by mailbox rule in the United States District Court Northern District of Florida on November 4, 2020, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. On February 23, 2021, the Northern District transferred this action to the Middle District. See Doc. 19. In the Complaint, Jones asserts claims against the following Defendants in their official and individual capacities: (1) the Florida Department of Corrections (FDOC); (2) J.M. Carter; (3) Warden Polk; and (5) Assistant Warden Parrish. He asserts Defendants violated his rights under the Eighth and Fourteenth Amendments when they failed to intervene to correct unsanitary and inhumane living conditions. See generally Complaint. As

relief, Jones requests declaratory and injunctive relief; compensatory, punitive, and nominal damages; costs of litigation; medical expenses; and any other relief the Court finds he is entitled to receive. This matter is before the Court on Defendants' Motion to Dismiss (Motion; Doc. 31). Jones filed a response in opposition to the Motion. See Reply to Defendants' Motion to Dismiss (Response; Doc. 36). The Motion is ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible

on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto

counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

### III. Plaintiff's Allegations[1]

In his Complaint, Jones, who describes himself as "mentally impaired" and a "S-3 Inmate," asserts that the living conditions he experienced while he was housed at the Hamilton Correctional Institution Annex [2] (Prison) amounted to cruel and unusual punishment. Complaint at 5-8. Jones alleges that the toilet in Golf Dorm Cell 2209 continuously clogged, which limited his "opportunities to urinate and/or deficate [sic]." Id. at 5. According to Jones, the sink in the cell smelled, had mold or mildew on it, and "throughout the day insects crawl[ed] out [of] the drainage." Id. Jones states that other than mealtime, he must get his drinking water from the sink. Id. Notably, Jones

---

[1] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the facts recited here are drawn from the Complaint and may differ from those that ultimately can be proved.

[2] Jones states that he started his confinement at the Prison on February 7, 2020. Complaint at 1. On November 23, 2020, Jones informed the Court that he was no longer housed at the Prison. Doc. 6. He is currently housed at Charlotte Correctional Institution. Doc. 37.

avers that "[c]austics are provided to every dorm on weekdays, cell clean up are once a week, if not every few weeks." Id. He further alleges that while in administrative confinement, he was confined to his cell twenty-four hours a day "excluding call-outs, 3 showers a week, and once a week outdoor recreation." Id.

Jones contends that Defendants Polk, Carter, and Parrish regularly inspected throughout the week. Id. at 5-6. Jones attempted to address the conditions of his confinement with them, but they instructed him "to stand under the cell light, Class A, in a bias manner causing the Plaintiff to experience spontaneous psychotic episodes in a fashion of uncontrolable [sic] outburst(s)." Id. at 6. As a result of these outbursts, Jones alleges that varying punishment has been imposed, including the administering of chemical agents, cell extraction, and confining him to his cell for 72 hours with nothing but his boxers. Id.

In August of 2020, Jones declared a psychological emergency due to the unsanitary conditions. Id. When he returned, his "cellmate refused to allow the Plaintiff back in the cell," and prison officials put Jones "in the mildew infested show [sic] for nearly 8 hours if not more." Id. According to Jones, he spoke with Carter about the "filth," but Carter ignored him. Id. Prison officials then moved Jones to a new cell, Cell H-3106. Id. However, Jones maintains that this new

5

cell had mold and mildew "caked up in the window and cell vent," as well as on the walls and floor. Id. at 6-7. Jones asserts that he used soap, toothpaste, his uniform, and bed linens to block open portions of the wall and the cell door to prevent insects from entering his cell. Id. at 7. For nearly five weeks, his cell was not cleaned. Id. Jones again attempted to address this issue with Polk, Parrish, and Carter, but they ignored him. Id. He asserts that he had a psychotic episode that led to him yelling about the inhumane conditions. Id. As a result, "J. Carter had chemical agents used assaulting the Plaintiff, then placed the Plaintiff on strip/property restriction for five days." Id.

According to Jones, he submitted a sick call request for a skin infection he "contracted from the filth of his cell." Id. at 7-8. Medical staff gave him calamine lotion and a therapeutic gel shampoo. Id. at 8. Jones asserts that the infections caused "excruciating pain." Jones maintains that these "psychotic outburst," which he identifies as anti-social disorder, arise from his inability to cope with the unsanitary conditions at the Prison. Id. Despite Jones alerting Defendants to the conditions, Jones avers that they refused to address the

issues. Id. As a result, Jones contends that he suffered physical injury, pain and suffering, and emotional distress. Id. at 9-10.

## IV. Arguments and Analysis

In the Motion, Defendants request the dismissal of Jones's claims against them because: (1) they are entitled to Eleventh Amendment immunity against monetary damages to the extent they are sued in their official capacities; (2) Jones's request for injunctive relief is moot; (3) Jones is not entitled to compensatory damages because his injuries were de minimis; and (4) Jones has failed to state a viable Eighth Amendment claim. Motion at 6-14. The Court addresses each argument below.

### Eleventh Amendment Immunity

Defendants maintain that to the extent Jones seeks compensatory or punitive damages from them in their official capacities they are entitled to Eleventh Amendment immunity. Motion at 6-7. Jones concedes as much. Response at 5. Considering this concession and controlling case law, the Motion is due to be granted as to this issue.[3] See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1220 (11th Cir. 2000) (noting that "the Eleventh Amendment does not generally prohibit suits

---

[3] A dismissal on the basis of Eleventh Amendment immunity is a dismissal for lack of jurisdiction and as such must be without prejudice. See Nichols v. Ala. State Bar, 815 F.3d 726, 733 (11th Cir. 2016).

against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages.").

## Injunctive Relief

Defendants argue that Jones's request for injunctive relief should be denied as moot because he no longer is housed at the Prison. Motion at 7-9. Alternatively, Defendants contend that because prison officials regularly give Jones and other inmates cleaning supplies and prison policies punish prisoners who do not clean, no injunction is necessary. Id. According to Defendants, "there is no controversy to adjudicate as the Plaintiff's sanitation of Plaintiff's cell is wholly within his responsibility as a close management inmate and the appropriate cleaning [materials] are supplied[.]" Id. at 9. In Response, Jones argues that injunctive relief is not moot because an injunction is needed "to further prevent inhumane living conditions" that Defendants failed to rectify. Response at 5. Jones maintains that he is not a close management inmate and "has not received or been given access to cleaning supplies." Id. at 6. Defendants' Motion is due to be granted as to Plaintiff's claim for injunctive relief because such claims become moot when a plaintiff is transferred to a different facility. See Davila v. Marshall, 649 F. A'ppx 977, 980-81 (11th Cir. 2016) (noting "a prisoner's request for injunctive relief relating to the

8

conditions of his confinement becomes moot when he is transferred.") (citing Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988)).

## Compensatory Damages

Defendants contend that pursuant to 42 U.S.C. § 1997e(e) Jones is not entitled to compensatory damages because Jones has not established more than de minimis physical injuries. Motion at 9-13. According to Defendants, Jones has alleged mental and emotional injuries and the only physical injury Jones asserts is related to a skin infection. Id. Defendants maintain that Jones cannot recover compensatory damages for his mental and emotional injuries and the allegations concerning the skin infection, which was treated, describe only de minimis physical injuries. Id. In response, Jones concedes that he "has no way of showing relief for compensatory relief," but contends Defendants are still liable for punitive and nominal damages.

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert physical injury that is more than de minimis. However, the injury does not need to be significant. See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted).

9

Until recently, the Eleventh Circuit read this statute to mean that "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." Brooks v. Warden, 800 F.3d 1295, 1307-08 (11th Cir. 2015). However, in Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021), the Eleventh Circuit reexamined § 1997e(e)'s physical injury requirement and precisely defined its limitation on the damages a prisoner can recover for constitutional violations. The court held and instructed "the district court to dismiss only a request for compensation for an alleged mental or emotional injury in the absence of an alleged physical injury." Id. at 1361. It reasoned that "a plaintiff – at least one alleging a constitutional violation – need not allege a compensable injury to seek punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious." Id.

In the Complaint, Jones alleges he suffered from "psychotic episodes" due to the conditions of his confinement but does not allege any physical injury because of these mental breakdowns. Complaint at 6-8. Jones also asserts that he contracted a skin infection from the "filth of his cell," which "caused the Plaintiff excruciating pain in the infected areas of his skin." Id. at 7-8. According to Jones, he received treatment in the form of calamine lotion and therapeutic shampoo. Id. at 8.

10

Upon review, Jones has not alleged a more than de minimis physical injury. Medical staff treated the alleged infection with calamine lotion and therapeutic shampoo, products that a free citizen could obtain over the counter. Jones does not allege he needed antibiotics or any further treatment. As such, the alleged injury was de minimis. See Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit an emergency room or doctor) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.")); Quinlan v. Personal Transport Services Co., 329 F. App'x 246, 249 (11th Cir. 2009) (describing injuries that are more than de minimis where immediate medical attention is needed, or evidence shows physical injury besides mere discomfort). Accordingly, the Motion is due to be granted to the extent Jones is not entitled to compensatory damages.

### Failure to State a Claim

Last, Defendants assert that "the cleanliness of Plaintiff's cell is strictly his responsibility as a close management prisoner." Motion at 14. Jones attached a grievance to the Complaint that included a response from the prison

that stated Jones regularly received cleaning supplies and encouraged him to use them. Id. Additionally, Defendants argue that Jones did not allege that he failed to receive cleaning supplies. Id. Therefore, Defendants contend that "[i]f the Plaintiff fails to comply with the rules and regulations of the prison, that is not the fault of any of the Defendants." Id.

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that

12

> prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

The Court notes that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991) (emphasis in original). However, "[n]othing so amorphous as 'overall conditions' can rise to the level

of cruel and unusual punishment when no specific deprivation of a single human need exists." Id. at 305.

Jones alleges the existences of mold, mildew, insects, and rodents, but also alleges that "[c]austics are provided to every dorm on weekdays, cell clean up are once a week if not every few weeks." Complaint at 5. Although Jones asserts in the Response that he never received cleaning supplies, Response at 6; this directly contradicts the allegations in the Complaint. At the motion to dismiss stage, Jones's allegations in the Complaint are controlling as the Court is limited to analyzing the allegations in the Complaint to determine if Jones has properly stated a claim. See Iqbal, 556 U.S. at 678. Moreover, Jones cannot amend his Complaint through arguments presented in a response to a motion to dismiss. See Fed. R. Civ. P. 7(b); Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)); see also Lickerish, Ltd. v. Z Lifestyle, No. 18-80572-CIV, 2018 WL 8264631, at *2 (S.D. Fla. July 12, 2018) (noting that "when evaluating a motion to dismiss, this Court looks to the facts alleged in the complaint, not the arguments in the plaintiff's response."). The unsanitary conditions Jones describes in the Complaint do not rise to an unconstitutional level, especially

considering the cleaning supplies he received. See Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010) ("having to use a toilet which lacks proper water pressure and occasionally overflows is unpleasant but not necessarily unconstitutional," and "[a]ny unsanitary conditions caused by the toilet here were mitigated by the provision of cleaning supplies to [the plaintiff]."). Rodents and insects are something the general public deals with on a regular basis in their own homes. Jones has not alleged an infestation, as such he has not alleged an "extreme deprivation" of basic human needs.

The fact Jones had cleaning supplies regularly provided to him and Defendants did regular inspections demonstrates that Defendants provided him with basic sanitation. Jones has failed to establish that the conditions he describes constitute an objectively unreasonable risk of serious damage to his safety. Likewise, even assuming the conditions described posed a serious risk, Jones cannot demonstrate that Defendants were deliberately indifferent to a serious risk for the same reason. The cleaning supplies Defendants provided and the regular inspections given bely any argument that Defendants deliberately disregarded the sanitations issues. As such, Jones has failed to state a claim for relief under the Eighth Amendment against any Defendant. Accordingly, the Motion is due to be granted.

In consideration of the foregoing, it is now

**ORDERED**:

1. Defendants FDOC, Carter, Polk, and Parrish's Motion (Doc. 31) is **GRANTED** and FDOC, Carter, Polk, and Parrish are dismissed from this action with prejudice.

2. This case is **DISMISSED** with prejudice.

3. The Clerk shall enter judgment dismissing this case, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of October, 2021.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

Jax-8

c:
Dytrell Jones, FDOC #M75660
Counsel of Record